STATE OF MAINE

SOMERSET, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-98-009

DONALD L. GARBRECHT
LAW LIBRARY

JAN 14 2000

WADE COMBER, as
Conservator and Guardian
of HUGH A. COMBER,

Plaintiff

v.

KENNETH L. McALLISTER,

Defendant

JUDGMENT

This matter came on for a nonjury trial to the court, with the plaintiff seeking rescission of certain real estate transfers pursuant to the statute concerning Improvident Transfers of Title. The court has fully considered the testimonial and other evidence presented, and makes it findings and conclusions below. Based on that evidence, the court will order judgment for the plaintiff in part and the defendant in part.

BACKGROUND

Hugh Comber (DOB - July 19, 1918) is a World War II army veteran who returned from the war to a life of semi-seclusion at family-owned camps on Pleasant Pond in Caratunk. Comber routinely ate his meals with his parents and did occasional maintenance work around the camp properties. Following the death of Comber's father in 1967 and his mother in 1989, he inherited all but one of the camp properties and a woodlot. A review of Comber's medical records from

1

November 1983 through November 1998 indicates that he was treated by the Veterans Administratrion for a number of medical problems, most importantly diabetes. There is also persuasive evidence from those records, and the deposition testimony of Dr. Sturzenberger and Dr. Zellinger, that Comber suffered from a progressive mental condition diagnosed as dementia as the result of post-traumatic stress disorder, likely dating back to his combat days. The condition started with confusion and slowly progressed to the point in September 1997 when Comber was hospitalized and ultimately transferred to the Nursing Home Care Unit at the Veterans Administration Hospital at Togus.

Kenneth McAllister is Comber's neighbor and has known Comber since 1966 when McAllister was 10 years old. McAllister frequented the camps as a child and as he grew older did incidental work around the properties. Since 1976, McAllister would plow snow, mow fields, shovel roofs, and provide mechanical repairs at Comber's camps. In addition, McAllister was Comber's friend, sharing meals occasionally and generally visiting with him. The present litigation stems from five transfers of real property from Comber to McAllister during the period from July 1991 to June 1997, which Comber's brother, Wade Comber, challenges as being improvident transfers in light of Comber's progressive mental problems and questionable purchase prices for some of the transactions.

### DISCUSSION

The statute concerning improvident transfers of title (33 M.R.S.A. § 1021 *et seq.*) provides that a court shall grant appropriate relief if it finds that a transfer of

2

property was the result of undue influence. The statute also provides for a presumption of undue influence when the transfer was made ". . . for less than full consideration by an elderly person who is dependent on others to a person with whom the elderly dependent person has a confidential or fiduciary relationship . . ." 33 M.R.S.A. § 1022(1). The plaintiff, Wade Comber, believes that those conditions existed at the time that his brother made the five transfers to McAllister. The court agrees in part.

At the time of all five transfers, as set forth in plaintiff's exhibit 1, Comber was over the age of 60. In addition, McAllister had a "confidential or fiduciary relationship" with Comber during this period, as defined by statute. The court accepts the opinion evidence of Vurle Jones with regard to fair market value. Transfers 1 and 2 in July 1991 and September 1993, taken together (the woodlot parcels), were for less than full consideration, as were transfers 4 in April 1996 (the barn) and 5 in June of 1997 (camp no. 3). With regard to the third transfer in September 1993 (camp no. 2) the sale price of $20,000 was close enough to the then value estimated by the appraiser as $25,000, that the court can not find that it was for less than fair market value. At no time was Comber represented by "independent counsel."

Based on the findings above, the question of whether the presumption applies depends upon whether Comber was "dependent" at the times of transfers 1, 2, 4, and 5. To be dependent, the court must find that the "elderly person" is ". . . wholly or partially dependent upon one or more other persons for care or support,

3

either emotional or physical, because the elderly person: (A). Suffers from a significant limitation in . . . emotional or mental functioning." 33 M.R.S.A. § 1021(1). The court cannot make such finding with regard to the period of 1991 through 1993, but based on the medical records, the deposition of Comber's doctors, and the various witnesses, the court finds that this status existed prior to the fourth transfer in April of 1996. Comber's condition was progressive, so it is difficult to place a specific date on any particular status. Also, his semi-reclusive lifestyle did not give others much opportunity to provide care or support for him. However, the weekly visits during the summer and monthly visits during the winter from his brother and periodic visits from his niece and other family members plus the concerns expressed by Veterans Administration staff members and their contacts, convince the court that the "dependent" condition existed sometime in 1995.

Based on the foregoing, the court concludes that the plaintiff is not entitled to the statutory presumption with regard to the first three transactions and, in the absence of the presumption, has failed to prove that these transfers were the result of undue influence. However, with regard to the last two transfers -- on April 30, 1996 (the barn) and June 13, 1997 (camp no. 3) -- the court finds that the plaintiff is entitled to the presumption. The effect of the presumption is to place upon the defendant the burden of proving that the nonexistence of undue influence is more probable than its existence. M. R. Evid. 301. The defendant has failed to sustain his burden. Even without the presumption, the substantial difference between the sale price and the fair market value of the barn and camp no. 3 make the transactions

4

seriously suspect. In addition, the defendant's inquiry to counsel as to whether any guardianship or conservatorship proceedings were pending prior to the last sale and his action in having the deed notarized elsewhere so that people in Caratunk would not be aware of the transfer add to this suspicion.

According to the statute, "When a court finds that a transfer of property was the result of undue influence, it shall grant appropriate relief enabling the elderly dependent person to avoid the transfer, including the rescission or reformation of a deed . . ." 33 M.R.S.A. § 1023(2). In light of the court's findings and conclusions, the court will enter judgment and an order of rescission with regard to the last two transactions. Therefore, the entry will be:

(1)     Judgment for the defendant with regard to transactions dated July 23, 1991, and September 24, 1993.

(2)     Judgment for the plaintiff with regard to transactions dated April 30, 1996, and June 13, 1997.

(3)     The land transactions between the parties for the "barn" dated April 30, 1996, as reflected in the warranty deed and mortgage deed recorded in the Somerset County Registry of Deeds at Book 2193, Pages 342 through 345 and for "camp no. 3" on June 13, 1997, as reflected in the warranty deed recording in Book 2319, Pages 76 and 77, are rescinded and the deeds are declared null and void.

Dated: January 11, 2000

_____
S. Kirk Studstrup
Justice, Superior Court

5